Ms. Fix and Mr. McKee arguing for the petitioner. I see you've divided your time, Ms. Fix. You're going to take 12 minutes, and then, Mr. McKee, you're going to... Oh, I'm sorry. Ms. McKee. Ms. McKee is going to do the rebuttal, and you're going to reserve three minutes of your time, and we have that set on the clock. Thank you, Your Honor. When you're ready, please go ahead. Good morning, Your Honors, and may it please the Court. My name is Sarah Fix, representing petitioner Reyna Calmo-Aguilar. With me today is my Supervising Attorney, David Schlesinger, and as previously stated, I'd like to reserve three minutes for rebuttal for my colleague, Kendall McKee. The BIA and the IJ committed three legal errors when they denied Ms. Calmo-Aguilar's claims for relief, each error warranting remand alone. In denying Ms. Calmo-Aguilar's claims for relief for asylum and withholding and removal, the BIA and the IJ erred first by misapplying this Court's established precedence and, second, by failing to consider relevant probative country conditions evidence, thereby reaching a conclusion not supported by substantial evidence. Third, the BIA and the IJ erred when they denied Ms. Calmo-Aguilar's claim for relief under the Convention Against Torture by, again, failing to consider the relevant country conditions evidence as required by this Circuit's case law, and thereby, again, reaching a conclusion not supported by substantial evidence. Mr. Fix, could I just seek to clarify a legal issue that is presented by this Court's jurisprudence, and I'm fixing specifically on Bringus Rodriguez. I believe you've argued that the IJ erred by denying her asylum claim on the basis that she did not report a rape she experienced as a 15-year-old girl, and you state in your brief that not reporting a sexual assault an applicant experienced as a minor is not relevant to a past persecution theory. That's not really correct, is it? I mean, didn't Bringus Rodriguez declare that it was a factor to consider, irrespective of weight? Yes, Your Honor. Our position today is that we are not arguing a categorical bar against considering a minor's failure to report a sexual assault. Our position is that the Bringus Rodriguez case held that it is inappropriate to place a burden on a minor who is a victim of sexual assault to report that assault to law enforcement under the facts and circumstances present in Bringus Rodriguez. So Ms. Camo Aguilar was 15 years old when she was correctively raped and impregnated by a group of men, and Ms. Camo Aguilar possesses the education of a 7- or 8-year-old, and the IJ and the BIA used that against her in denying her relief. So what you're really arguing is that their determination that she would not suffer persecution or torture with the acquiescence of government officials is not supported by substantial evidence, because as Judge Smith notes, Bringus Rodriguez establishes that failure to report is a factor that can be considered, and the agency clearly did that here. So as I understand your argument, you are suggesting that even considering that factor with the other reference that was permitted, it wasn't substantial evidence. Yes, Your Honor. So there's a couple different arguments there. There is our argument that the totality of the circumstances, the entire holding is not supported by substantial evidence, but there's the separate argument that the analysis that the IJ and the BIA engaged in faulting Ms. Camo Aguilar for not reporting her sexual assault as a minor was a legal error, because it is, under Bringus Rodriguez, a petitioner's failure to report a sexual assault is a factor to be considered alongside documentary evidence, credible testimony. However, the IJ and the BIA did not recognize the difference between Ms. Camo Aguilar's rape that she suffered as a minor and her failure to report that assault, versus her failure to report an assault that she suffered as an adult. And so considering the sexual assault that she suffered as a minor and placing the burden on her to report that assault was legal error, because it tainted the entire analysis of whether Ms. Camo Aguilar met the unwilling and unable standard. And so because that was all combined into the same analysis, and the IJ stated in its oral opinion that on that basis alone, the court could deny her relief. And this is also problematic under Bringus Rodriguez, because under Bringus Rodriguez, a failure to report a sexual assault cannot be outcome determinative. And the IJ here engaged in the exact evidentiary gap-filling that Bringus Rodriguez sought to dispose of. So while the entire conclusion of the IJ and the BIA is not supported by substantial evidence, the BIA and the IJ also committed legal error in analyzing Ms. Camo Aguilar's failure to report her sexual assault as a minor. And that alone warrants remand with instructions to the BIA not to consider Ms. Camo Aguilar's failure to report her sexual assault as a minor, even though the court can appropriately consider her failure to report as an adult. If we were to agree and remand for the agency to consider the asylum and withholding of removal claims, how would that impact the CAT claim? Your Honor, another error that we would like to bring to the attention of the court that the BIA and the IJ committed was that the IJ and the BIA did not engage in a separate analysis of Ms. Camo Aguilar's CAT claim. So a remand to the BIA would also require instructions to the BIA to separately analyze and consider the CAT claim. That's under Camalthus v. INS of this court that states that the CAT claim and the claim for asylum and withholding of removal are analytically different and require a separate analysis and consideration of the objective country conditions evidence. It is legal error in this circuit for the BIA and the IJ to not consider all relevant probative country conditions evidence in considering the CAT claim, which the IJ and the BIA did not do here. So that's another illegal error as well that requires remand with instructions to consider the relevant country conditions evidence. The country conditions evidence that the IJ and the BIA failed to consider, while the IJ did note that there are no anti-discrimination laws in Guatemala and that rape is illegal, what the IJ failed to mention was that members of the LGBTQ community suffered targeting and violence. The record shows that members of the LGBTQ community suffer from police abuse, and in 2019, in a seven-month period, in a country smaller than the state of Pennsylvania, there were 35 violent attacks and 19 murders of members of the LGBTQ community. Women, particularly in the LGBTQ community in Guatemala, suffer corrective rape, just as Calma Aguilar suffered. And leaving out the relevant country conditions evidence that doesn't just demonstrate discrimination, but also violence that members of the LGBTQ community suffer was legal error for the IJ and the BIA. I'm sorry, go ahead. The government hints at this in their brief that perhaps we should look more closely into subgroups rather than the entire LGBTQ and look at the evidence. You can definitely see, just in a hypothetical example, in some countries they may be liberalizing laws against gays and lesbians, but still be very repressive towards transgendered people. Should we do that here, look at it, and instead of looking at as a whole group, look at in particular to the petitioner? No, Your Honor. Ms. Calma Aguilar is a part of the LGBTQ community, but Ms. Calma Aguilar also suffers under a double whammy situation as being a woman in Guatemala as well. So while the IJ and the BIA did recognize that she was a part of this protected group as a member of the LGBTQ community, the IJ and the BIA didn't seem to— the IJ actually held that she had suffered past persecution, she was a part of this protected group. Ms. Calma Aguilar does also suffer as a woman in Guatemala. This court recognized in Prodomo v. Holder that femicide and violence against women remains a huge problem in Guatemala as evidenced by ongoing violence against women, domestic violence situations. Ms. Calma Aguilar mentioned in her credible testimony she knew a woman that was suffering from domestic violence and who tried to report this to police and the police laughed at her. On that one, the transcript says the woman she knew was mistreated by her husband. Is there anything else that explains what that mistreatment was? No, Your Honor. I don't believe there's further evidence in the record that shows what that mistreatment was, but it's assumed that— but the mistreatment that would warrant going to the police and to law enforcement would be domestic violence and would be violence against that woman. Simple mistreatment would likely not be something that a woman would feel the need to go to law enforcement that she knows is likely not to help her anyways and risk going to law enforcement and face future retaliation and harassment for something less than violence. You've recounted the country conditions evidence and we have a presumption in our circuit that the agency has reviewed the evidence unless there's reason to believe that they haven't. Do you have evidence that the BIA did not consider the country conditions evidence? Yes, Your Honor. The evidence that we have that the IJ did not consider the country conditions evidence is that it was not mentioned in the IJ's oral decision. I do see that I'm running a little low on time. I would like to reserve some time for rebuttal, but I would like to finish answering your question. You're fine. We set the clock at 12, so you have the whole 2 minutes 20 is yours if you'd like to use it. Thank you, Your Honor. The evidence that we have that the IJ and the BIA did not consider the country conditions evidence is just the holes that the IJ left in the oral decision. So not only did the IJ fail to mention the targeting and violence of LGBTQ members, the IJ also failed to recognize the ineptitude and under-resourced and underfunded police and law enforcement in Guatemala, which demonstrates the Guatemalan's government not only unwillingness but inability to help victims of violent crime, particularly members of the LGBTQ community and particularly women. So the record shows that police and law enforcement, they are under-supplied, they're under-staffed, they're under-resourced, and it makes it and they are unable to respond to victims of violent crime. More often than not, police investigations do not result in arrest, let alone conviction. And particularly in rural areas, like where Ms. Calma Aguilar was residing in two different places in Guatemala. And so the IJ did not recognize not only the Guatemalan government's unwillingness to help victims like Ms. Calma Aguilar that are members of the LGBTQ community, but also their inability to respond to victims of violent crime and to violence, which together shows that the Guatemalan government is unwilling and unable to protect victims like Ms. Calma Aguilar. You filed a motion asking us to remove this case from the calendar and refer it to mediation and indicated that the government opposed that based on the proximity to argument that it was approximately three weeks before the date for argument. Have you had any communications with the government about potentially sending this case to mediation? No, Your Honor, we haven't had any conversations with the government since that motion was filed and then denied without prejudice by this court. The reason that we filed the motion so late was because we, for a multitude of reasons. First, we just secured pro bono counsel for Ms. Calma Aguilar in the last week to move with her through prosecutorial discretion. And that pro bono counsel has already started working expeditiously on getting through that process. We did wait until the case was fully briefed because we wanted to have communications with opposing counsel in resolving this case outside of court. And so we waited until it was fully briefed to have the full picture. Those communications didn't come to anything. The opposing counsel wasn't amenable. And so then that's when we filed the motion to put this into mediation. Thank you. All right, thank you. Thank you, Your Honor. Ms. Singer. May it please the Court. My name is Jennifer Singer and I represent the United States Attorney General, the respondent in this matter. This case is not whether or not conditions in Guatemala are suboptimal for lesbian women. This case is about whether the petitioner met her burden of establishing that the government of Guatemala was unable and unwilling to protect her from rape or sexual assault. Given the deferential standard of review that the Court employs in these types of cases, I submit that the petitioner has not done that. Because the petitioner did not report her rape or attempted rape to the authorities, Ornelas Chavez mandates that a petitioner in that circumstance is required to show that reporting to authorities would be futile or subject that person to additional harm. But this case seems really remarkably similar to the facts in Bringus-Rodriguez. How do you distinguish Bringus-Rodriguez? I would rather offer that this case is more analogous to the last case we asked for. But that's not what I asked you. I'm sure you would, but the question and the problem for the government, in my view, is Bringus-Rodriguez. So referring me to another case is not going to help. I'm not going to forget about Bringus-Rodriguez. I think the facts are distinguishable in Bringus. In Bringus, in particular, the majority stated that one of the key pieces of evidence that was not considered was the petitioner's gay male friends who went to the police and who told them that they were raped, and the police laughed at them and did nothing. There is no such analogous evidence here. I suppose they would argue that the analogous evidence is that she knew of a woman who went to the police, presumably reporting domestic violence, and the police did nothing. The idea that going to the police and reporting any sort of abuse is not likely to help you. I would argue that those circumstances are not similar. The anecdotal evidence that the petitioner here mentioned about her, the woman that she was aware of, all that was stated in the record was that she went to the police and said that she was mistreated by her husband. That is not the same as a woman going to the police and saying she was raped or attempted rape. I would say that those are different circumstances. Also in Bringus, the petitioner was a gay man, and there was lots of evidence in the record that the police, there was official discrimination and harassment and violence perpetrated against gay men. That evidence is lacking here. In Guatemala, there's no country condition evidence of mistreatment, discrimination, and abuse of people in the LGBTQ community? Discrimination of the LGBTQ community in general, yes, and the country condition shows that, I mean, the country condition evidence definitely sets out treatment of gays, gay men, transgender, and there's really not a whole lot of mention about lesbians per se. And so women enjoy such a privileged position in Guatemalan society that we should assume that lesbians and gay women are not being mistreated? No, I mean, there is evidence that there is discrimination, but that does not necessarily mean that the government would be unwilling or unable to protect lesbian women from rape or sexual assault. But the country condition's evidence does set out and make gradations between the treatment of lesbians, gay men, and transgender individuals. And I think case law also backs that up, that these people are treated differently. And the country condition evidence we have here says that the police do harass gay men and transgender individuals. It does not make any mention of lesbians. And the country conditions does set out differences between lesbian, gay, transgender individuals. So I think it's significant that it's silent with respect to lesbian women. All right. So your argument is that we should view each part of this group, view subgroups as opposed to view the LGBTQ community as a whole? I think the LGBTQ community as a whole informs the decision, but the fact that the country conditions does make distinctions between these groups, I think it's significant that if the country conditions evidence treats these groups as being and acknowledges that these groups are treated differently, I don't think how the court can ignore that these groups are treated differently. And there is an absence of discussion. Didn't we, in Bringus Rodriguez, say part of the problem of maybe breaking it down too finely is the country evidence sometimes, I mean, they weren't put on notice that we would be doing this kind of analysis. So they may not have broken it down as finely as, situations may be bad, but they may not have put that detail in the country conditions report. And then if we do that, country conditions reports really would not be particularly useful for us. I mean, there's other sources of evidence that a petitioner can provide to establish her claim. Petitioner provided the evidence, and this is the evidence we have before this court. And in Bringus, I mean, I think there was a lot of emphasis put on the fact that he was a child and a gay man, and went into the country conditions evidence about his past experiences with police and how he was harassed and mistreated by officials, and he was jailed, and everyone he turned to, or everyone he interacted with on an unofficial level mistreated him or tacitly accepted the abuse he suffered. We don't have that here. He also, in Bringus, the petitioner testified that his gay friends went to the police, told them they were raped, and the police laughed at his face. We don't have that evidence here. It wasn't part of the problem, the error in Bringus-Rodriguez, that the agency considered children as a group, and whether the government was willing and able to protect children, as opposed to the protection of gay children. That's true. But on Bonk Rehearing, the panel corrected that error and looked to all the evidence on the record as a whole. I get that. But the point is that you're suggesting that we parse the LGBTQ community, which would seem to be the same error in separating children, heterosexual children, gay children, and deciding if the police could protect them. It seems fairly analogous. I still would beg to differ. The country conditions, I think in Bringus, they made a point in saying that the country conditions, that there was a dearth about how children were treated. Here, the State Department reports in and of themselves, treat and make distinctions between the treatment of lesbian women, gay men, transgender individuals. I don't think, I don't know how we could ignore that that's not the case on the ground when the country conditions affirmatively state that these segments of the population are treated differently. And petitioner's claim here is that as a lesbian woman, the government would be unwilling to help her because she is a lesbian. And I don't see how the Department of State reports presented here suggest or conclusively show or compellingly show that as a lesbian going to police authorities saying that she was raped, that the police would be unwilling to help her because she is a lesbian, where the country conditions here show that, are silent to that, and rather show that police mistreatment is focused on gay men and transgender individuals. So petitioner's counsel filed a motion asking us to hold the case in abeyance and refer it to mediation and indicated the government was opposed because of the timing. Does the government have a position now or is it still opposed to mediation? Just to clarify, I don't, I think they inferred that we were opposed to mediation because of the timing, and that's not the case. The simple case is that during this whole course of proceedings, petitioner can simultaneously seek PD with ICE. She's not precluded from doing so, and there's always an avenue for doing that. We wouldn't be amenable to putting it into abeyance if now that we know that, you know, pro bono is secured for that purpose and that stuff is actually in the works for submitting a PD packet to Department of Homeland Security. So we would be amenable to holding the case in abeyance. So we have to be careful about taking a case off the calendar and holding it in abeyance perhaps for a very long period of time without safeguards to make sure that the case is progressing. So I suppose it's possible procedurally we could hold it in abeyance and allow the parties, allow the petitioner to seek prosecutorial discretion,  if we assigned it to a mediator. What's the government's position on going into mediation during that process? I mean, if mediation is a better avenue, the government's not opposed to that. But, I mean, part of our hesitation, too, was that these requests for PD have been taking a while, and given that pro bono counsel was assigned to this case quite a while ago, that was also part of our reason to oppose. Yes, I understand they can be more than a year. It can take quite a while. Yes, that's correct. Ms. Sayre, let me ask about a concern I have, and I hope it's not simply my idiosyncratic reading of the IJ's decision, but I'm troubled by, and I'm wondering if the government is troubled by, what seems to be the agnosticism of the IJ as to what to believe. At one point, I think the IJ says that she is not convinced as to the exact facts of this case. What kind of fact-finding was there, or at least what kind of determination was there as to credibility? I suppose we can infer what the IJ believed as a result of the order that was entered by the IJ, but there seems to be at least some equivocation here. Would you agree? I think the IJ expressed doubt as to what she believed as to what Petitioner's story was, because there was evidence in the record  but the IJ was clear in assuming Petitioner's credibility in going forward and making a decision on the merits of Petitioner's claim with Petitioner's facts as asserted assumed to be credible, and the board affirmed on that basis as well. Yes, it did. There was no recognition at all of the fact that the IJ didn't make an explicit determination in this regard as to credibility. I was just taken by this because I'm not sure that I've seen in any other immigration case before a situation where an IJ was less than explicit about what she or he believed and gave credence to. I've seen it before where there's hesitation or a pause to concern but not a full-fledged adverse credibility finding, and either way at the end of the day it doesn't matter because Petitioner's credibility was assumed here. It was, yes. I see my time is winding down, and if there's no further questions I would like just to end on this one brief final topic, is that I think this case is more analogous to Velazquez-Gaspar, and especially with Bringis and Velazquez-Gaspar, and this case goes down to the standard of review. With the concurrences and the dissent and the majority opinion in both those cases, it's clear that reasonable minds may differ on the persuasiveness or compellingness of the evidence, and I think this case reasonable minds can differ too, but given the standard review and Velazquez-Gaspar, which I think is controlling in this case, I think Petitioner failed to meet her burden of establishing that the government of Guatemala would be unwilling or unable to protect her from rape and sexual assault, and for that reason I think the petition for review should be denied. Thank you. Ms. McKee. Good morning, Your Honors. Kendall McKee for Petitioner Reyna Camel Aguilar. The government argues that this case is more similar to Velazquez-Gaspar rather than Bringis-Rodriguez. However, that is simply not true. Just like Bringis-Rodriguez, Ms. Camel Aguilar suffered rape at the age of 15, and she did not report that rape because she knew of others similarly situated in her community who had sought help from the police and were unsuccessful in doing so. The government argues or really emphasizes that in Bringis-Rodriguez it was gay young men who had tried to seek help from the police. However, in Bringis-Rodriguez what was determinative was not that it was gay men but those similarly situated in his community who had sought help from the police to no avail, and really what it comes down to is that he was ignored and that those friends were ignored and not taken seriously. The government also seems to suggest that the country conditions evidence do not apply to Ms. Camel Aguilar because they use the term gay. However, the plain definition of the term gay includes women and men. It's not explicitly used just for men. And also the country conditions evidence on 294 and 278 seem to include lesbian women in the definition of the word gay. I'd also like to address you asked my colleague whether there's any evidence in the record that the IJ did not consider the entire record, and I think there is some. For example, on page 273 of the record, the IJ did note in her oral decision that rape is a crime in Guatemala. However, in the very next sentence it states police had minimal training or capacity to investigate sexual crimes or to assist survivors of such crimes, and the government did not enforce the law effectively. You will not find this anywhere in the IJ's oral decision or the BI's final order because they did not consider any evidence about how police respond to LGBTQ victims of crimes. They did not consider that police often abuse and extort LGBTQ community members or that they extort them with threats of violence. The government argues we're asking for a re-weighing of the evidence. However, that is not our position. We are arguing that all the country conditions evidence should be considered at the BIA's and that they cannot selectively pull from the record. I see I'm running low on time, and if there are no further questions, I would like to thank the Court for its time this morning. Thank you. Thank you all for your arguments this morning, and Ms. Fix and Ms. McKee, thank you for appearing before the Court this morning. You both did a very good job for your client, and I'm sure your supervising attorney is very proud of you, so welcome to the Ninth Circuit. Thank you. Thank you. We're going to take this case under submission, and we are in recess.
judges: UNKNOWN, BADE, LEE